JOLLEY v. BROWN et al.   (No. 1069.)

(Court of Civil Appeals of Texas.   Amarillo. Dec. 20, 1916.   Rehearing Denied Jan. 17, 1917.)

1. EVIDENCE ⬥⟶158(9)—WRIT OF POSSESSION —ADMISSIBILITY OF EVIDENCE.

Where a judgment foreclosing a vendor's lien did not authorize a writ of possession or other writ, and no such writ is found with the papers in the suit or on the clerk's record, the admission of testimony of a sheriff, in a suit to try title to the land, that he had dispossessed a party in possession of the land under a writ of possession and order of sale, was error.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 484; Dec. Dig. ⬥⟶158(9).]

2. EXCEPTIONS, BILL OF ⬥⟶37—TIME FOR APPROVAL AND FILING.

The better practice is to take the bill of exceptions, have it approved and filed during the trial at the time an adverse ruling is made.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. §§ 47, 48; Dec. Dig. ⬥⟶37.]

3. EXCEPTIONS, BILL OF ⬥⟶56(3)—QUALIFICATION.

A statement by the court, upon a bill of exceptions to the admission of testimony, that the court found the claims of several parties simulated, and that another party was the real beneficiary but claimed no interest in the land and hence could not recover, which rendered the testimony immaterial, was not a qualification of the bill, as it neither denies, modifies, nor explains the facts set out in the bill, but is simply a statement why the ruling admitting the evidence in the opinion of the trial judge is not reversible error.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. § 94; Dec. Dig. ⬥⟶56(3).]

---

⬥⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Exceptions, Bill of ⬤⇒51—Allowance—Qualification.**

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 2063–2067, where a plaintiff in error presents a bill of exceptions, the court has no right to qualify it, but must either sign it, or, if not correct, indorse his refusal to do so and file a proper bill, leaving the plaintiff in error to his remedy of a bill by bystanders if not satisfied.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. §§ 74, 78; Dec. Dig. ⬤⇒51.]

**5. Appeal and Error ⬤⇒938(1)—Review—Presumptions—Qualification of Bill of Exceptions.**

It will be presumed by the appellate court that the qualifications of a bill of exceptions presented by plaintiff in error was made with his consent.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3795, 3796, 3798; Dec. Dig. ⬤⇒938(1).]

**6. Trespass to Try Title ⬤⇒41(1)—Evidence—Weight.**

A pleading not being evidence, where, in an action to try title, defendants alleged that the claims of other parties were simulated, but the only evidence was the denial of the allegation by one of said parties, his denial left the allegations unsustained by any testimony.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 62; Dec. Dig. ⬤⇒41(1).]

**7. Landlord and Tenant ⬤⇒330(2)—Lease—Assignment by Landlord.**

Where the lessor of land conveyed it, his grantee, as the assignee of the lease contract, was entitled to recover crops, or the value thereof, which belonged to the lessor under the terms of the lease contract.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 1398; Dec. Dig. ⬤⇒330(2).]

**8. Landlord and Tenant ⬤⇒68 — Title of Landlord—Estoppel of Tenant.**

A tenant cannot dispute the title of his landlord and attorn to another without surrendering possession.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 158, 210–214; Dec. Dig. ⬤⇒68.]

**9. Vendor and Purchaser ⬤⇒288—Foreclosure of Vendor's Lien.**

A judgment, in a second foreclosure of a vendor's lien secured by a series of notes, could in no way affect the title of a purchaser under a prior foreclosure.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 815–819; Dec. Dig. ⬤⇒288.]

**10. Trespass to Try Title ⬤⇒48—Writ of Possession.**

Where a judgment in an action to try title to land expressly dismissed a party from the case without prejudice to his rights, no writ of possession could properly issue against him or his tenant.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 72; Dec. Dig. ⬤⇒48.]

**11. Vendor and Purchaser ⬤⇒261(5) — Notes—Priority of Indorsee.**

The rule that when the payee of a series of notes secured by a vendor's lien retains a part of the series, transferring the remainder by the usual indorsement or guaranty, the notes so retained will be postponed in the enforcement of the lien in favor of the transferees, does not apply where the transfer of a part of the series is without recourse.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 690; Dec Dig. ⬤⇒261(5).]

Error from District Court, Foard County; J. A. Nabers, Judge.

Suit to try title by J. J. Brown against W. L. Jolley and others, in which the heirs of R. S. Sparks, who died pending suit, intervened. From the judgment, defendant W. L. Jolley brings error. Reversed and remanded.

D. J. Brookreson, of Benjamin, for plaintiff in error. G. W. Walthall and R. P. Brindley, both of Crowell, for defendants in error.

HALL, J. Involved in this suit is the title to and the right of possession of 313 acres of land, including the ownership of certain wheat grown on the premises. R. S. Sparks is the common source of title. He conveyed the land to W. W. Layman June 28, 1909, by general warranty deed, which retains a vendor's lien upon the premises described therein, to secure the payment of nine promissory notes, in the sum of $500 each. The first two of the notes, upon their maturity, were paid, but Sparks transferred the third note to Mrs. Minnie Shelton and Mrs. Mattie Woods, who, joined by their husbands, filed sued thereon, against W. W. Layman and W. L. Power, as assignee, to foreclose the lien. Judgment was rendered against Layman and Power for the amount of the note, interest, attorneys' fees, and costs, and foreclosing the lien upon the land in controversy, with the usual provision directing order of sale and writ of possession. The sheriff of Foard county sold the land under this judgment on April 1, 1913, at which sale R. W. Warren became the purchaser. In the fall of 1913, Warren leased the premises to J. J. Brown under a contract, by the terms of which Brown should sow 80 acres of the land in wheat, and in consideration of his services should be paid $40 and have the free use of the remaining land for pasturage. It was stipulated in this contract that Warren should have all of the wheat grown on the 80 acres. On the 11th day of April, 1914, Warren conveyed the land to R. T. Williams, by warranty deed; on June 4, 1914, R. T. Williams conveyed it to plaintiff in error, Jolley.

Soon after the land was purchased by Warren under the foreclosure sale mentioned above, R. S. Sparks, J. F. Sparks, R. E. Sparks, and T. N. Sparks filed a second suit to foreclose the lien securing the remaining six vendors' lien notes. Warren was in possession of the land at this time and, together with Layman and Power, was made a party to the suit. The defendants answered. Warren filed a general and several special exceptions in addition to answering to the merits. Upon a trial of that case before the court without a jury, after the evidence had

been introduced and the court had considered the case for some time, one of Warren's special exceptions was sustained, which had the effect of dismissing him from the suit. The plaintiffs did not ask leave to amend, but took judgment against Layman and Power, foreclosing the lien on the land in controversy as against them and as to Warren provided as follows:

"It is further ordered, adjudged, and decreed by the court that the defendant R. W. Warren's special exception No. 7 be sustained, and that the said defendant, R. W. Warren, be dismissed from this cause without any prejudice to any equitable rights he may have in the premises, and that said defendant R. W. Warren go hence without day, and that plaintiffs take nothing as to him, and that he recover his costs in this behalf expended, and for which execution may issue against plaintiffs."

Order of sale was issued on this judgment in due time and the premises sold January 6, 1914, to the defendants in error R. S., J. F., R. E., and T. N. Sparks. At the time of this sale, defendant in error Brown was holding the land under a written lease from R. W. Warren. Williams, who purchased the land from Warren April 11, 1914, visited the premises to see about the wheat, and learned that Brown had arranged to take the wheat himself and pay rent out of it to R. S. Sparks and his sons. Williams tendered Brown $40 due him under the contract, although the amount was not payable until July 15, 1914, which Brown refused. Upon learning that Brown had repudiated his rental contract made with Warren and had attorned to Sparks, Williams declared the contract forfeited and proceeded to take possession of the premises. Immediately Brown filed this suit and was granted a temporary injunction. In the meantime, he harvested and marketed the wheat, amounting to 1,492 bushels. R. S. Sparks died in the meantime, and his heirs intervened, claiming title to the land.

The issues were tried by the court, without a jury, April 3, 1915, resulting in a judgment for the plaintiff Brown, against the defendants W. L. Power, P. O. Williams, and R. T. Williams for $1 damages, perpetuating the injunction against said defendants and plaintiff in error, restraining them from interfering with possession of the land in controversy and decreeing that plaintiff in error take nothing by reason of his claim for wheat, and against him in favor of the interveners Sparks and others for the land in controversy.

[1] Plaintiff in error assigns, first, that the court erred in admitting in evidence, over his objections, the testimony of the sheriff of Foard county, to the effect that said officer had dispossessed Brown under a writ of possession and order of sale issued out of the district court, in the case of R. S. Sparks et al. v. W. W. Layman et al.

The contention of plaintiff in error is that since the law requires an officer executing an order of sale and writ of possession to indorse thereon his return in writing, showing how he had served the same, and further provides that record shall be made thereof by the county clerk in a minute book kept for the purpose, such written return is the best evidence of how the writ was executed.

In the case of Ayres v. Duprey, 27 Tex. 593, 86 Am. Dec. 657, it is held that the official return made upon process by a sheriff is the best evidence of his action, and as a general rule, in the absence of fraud or mistake, it cannot be varied or contradicted by the parol testimony of such officer.

It appears from the record that the judgment did not authorize a writ of possession or other kind of writ to issue against R. W. Warren, or his tenant Brown. No such writ was found with the papers in the original suit, nor did the clerk's record show that any had ever been issued. The clerk did not remember that he had ever issued it, and the officer's return on the order of sale did not show that Brown was dispossessed. We think the court erred in admitting the oral testimony.

[2] Under this assignment plaintiff contends that the court has erred in qualifying his bill of exceptions to the admission of this testimony, as follows:

"Examined, approved and ordered filed as a part of the record in this cause, this the 25th day of May, A. D. 1915, with the qualification that in considering this matter the court found from the evidence, which founded on sufficient pleading, that the claim of Warren was only simulated, as was also Jolley and Williams, and that W. L. Power was the real beneficiary of the Warren claim inasmuch as Power claimed no interest in the land by any pleading in this case, he could not recover, and the matters above set forth became immaterial, and no other judgment could have been rendered, either with or without the above testimony. The court had stated to both counsel that in rendering judgment he would discard all immaterial and incompetent testimony." (Signed by the trial judge.)

Upon the bill of exception the following appears:

"Intervener objects to the above qualification for the reason that there was no evidence introduced as is shown by the statement of facts herein to justify a finding that his claims herein were simulated, and he accepts this bill under protest because he has no other way of preserving the bill of this time." This is signed by the attorney for plaintiff in error.

[3] It appears from the statements in the brief that this bill of exception was not written out and signed by the court at the time the evidence was admitted. This is rarely ever done; but the better practice is to take the bill of exceptions, have it approved and filed during the trial and at the time the adverse ruling is made. While it would tend to retard the trial, the result would be more satisfactory, and criticisms, such as appear in this record, would be avoided. This statement by the trial judge upon the bill of exception is really not a qualification. It neither denies, modifies, nor in any way explains the facts set out in the bill, but is simply a statement to this court why the ruling in the opinion of the trial judge is not reversi-

ble error. Plaintiff in error contends that he had no reason to expect any qualification whatever when the bill was presented for approval, since the court did not indicate, at the time the exception was taken, that any qualification would be entered on it. The rule of procedure in such cases is clearly indicated in Brunner Fire Ins. Co. v. Payne, 54 Tex. Civ. App. 501, 118 S. W. 602, and in Dennis v. Kendrick, 163 S. W. 693. Under the statute, the trial judge has no right to qualify a bill of exception without the consent of the party presenting it. Vernon's Sayles' Civil Statutes provides, by article 2063, that it shall be the duty of the party taking any bill of exception to reduce it to writing and present it to the judge for his allowance; whereupon, as is provided by article 2064, it becomes the duty of the judge to submit such bill to the adverse party or his counsel, and, if it is found to be correct, it shall then be signed by the judge without delay and filed with the clerk.

[4] Article 2065 provides that, in the event the judge shall find such bill of exceptions to be incorrect, he shall suggest to the party, or his counsel who drew the bill, such corrections as he may deem necessary, and, if they are agreed to, the corrections shall be made, the bill signed and filed with the clerk. Article 2066 provides that, should the party presenting the bill not agree to the corrections, the judge shall return it to him with his refusal indorsed thereon and shall make out and sign and file with the clerk such a bill of exceptions as will in his opinion present the ruling of the court in that behalf as it actually occurred. If we consider these proceedings as taking place during the trial, as is evidently contemplated by the statute, the remedy given the party presenting the bill is provided by article 2067. This article provides that such party may procure the signatures of three respectable bystanders, citizens of this state, attesting the correctness of his bill, and have the same filed as part of the record. The bill in the instant case was not presented to the judge until some 20 days after the adjournment of court. This was, of course, too late for plaintiff in error to have prepared and filed a bystanders' bill; and, if we admit that the trial judge was unfair in appending to the bill qualifications of which plaintiff in error had no notice at the time the exception was taken, the fault is attributable to plaintiff in error in not asking the court to stop the trial and take his bill at the time the ruling was made.

[5-8] We must presume that when a bill of exceptions appears in the record, which has been qualified by the court, the qualification was made with the consent of plaintiff in error. To consider protests by attorneys who have accepted the bill and filed it as part of the record would bring up issues of fact which the appellate courts should not be asked to decide. Imperfections in the record and all issues relating to the proper presentation of the case in this court must be settled in the trial court. Neville v. Miller, 171 S. W. 1109. We are unable to find anything in this record sustaining the trial court's statement that the claims of Warren, Williams, Power, and Jolley were simulated. It is true the defendants alleged that their claims were simulated, but the only witness who testified upon that issue was Power, and he denied it unequivocally. The pleading, of course, was not evidence, and Power's denial left the allegations unsustained by any testimony. Starkey v. H. O. Wooten Grocery Co., 143 S. W. 692. On the contrary, we find transfers of the land to each of these parties and a duly executed written lease of the entire tract from Warren to Brown, which, prima facie, show a valid claim. The evidence of Campbell as to the issuance and execution of the writ of possession not being admissible, and there being no other evidence tending to show that Brown or Warren had been dispossessed under the Sparks judgment, Jolley, as assignee, was entitled to all the wheat under the lease contract between Warren and Brown. Whitehead v. Fisher, 64 Tex. 638. If upon another trial the evidence should be the same, plaintiff in error, Jolley, should recover the wheat or its value. Brown could claim only the sum of $40, as provided in the lease contract. As the tenant of Warren, he could not attorn to Sparks. Juneman v. Franklin, 67 Tex. 411, 3 S. W. 562; Lang v. Crothers, 21 Tex. Civ. App. 118, 51 S. W. 271; Bruce v. Richardson, 26 Tex. Civ. App. 615, 64 S. W. 785; Hulett v. Platt, 49 Tex. Civ. App. 377, 109 S. W. 207.

[9, 10] The judgment in the Sparks foreclosure in no way affected the right acquired by Warren by his purchase of the land under the first foreclosure. The above quotation from the judgment expressly dismisses him from the case without prejudice to his rights. Therefore no writ of possession could properly issue against him or his tenant, Brown. Taylor v. Ward, 102 S. W. 465; Jeffus v. Allen, 56 Tex. 195.

[11] While it appears from the record that the first two notes of the series were paid to Sparks, it is not shown who paid them, and we cannot pass upon the merits of plaintiff in error's contention that the proceeds of the land should be distributed at the ratio of three-ninths to Warren and sixth-ninths to Sparks. The record discloses that, after the payment of the first two notes, the third was transferred to Minnie Shelton and Mattie Woods, by R. S. Sparks, and that he retained the remaining six notes. We are asked to reverse and render the case; but, on account of the lack of information furnished by the record, we are unable to adjust the equities. As said by Conner, C. J., in Martin v. Gray, 159 S. W. 118:

"It seems to be finally pretty well settled, where a payee of a series of notes * * * retains part of the series transferring the remain-

der by the usual indorsement or guaranty, that then the notes so retained by the payee will be postponed in the enforcement of the lien in favor of those to whom part of the series may have been so transferred"; but this rule "is not applied, nothing else appearing, where the payee * * * transfers part of a series of notes without recourse"—citing Fitch v. Kennard, 133 S. W. 738; Walcott v. Carpenter, 132 S. W. 981; Perry v. Dowdell, 38 Tex. Civ. App. 96, 84 S. W. 833; Anderson v. Perry, 98 Tex. 493, 85 S. W. 1138; Dilley v. Freedman, 25 Tex. Civ. App. 39, 60 S. W. 448; Lewis v. Ross, 65 S. W. 504; Douglass v. Blount, 93 Tex. 499, 56 S. W. 334.

Plaintiff in error urges several other assignments of error, some of which are disposed of by what we have already said. On account of the meagerness of the statement of facts and the failure of the trial court to file findings of fact, we are not able to pass upon the questions raised by most of the remaining assignments.

Because of the errors pointed out, the judgment is reversed, and the cause remanded.